Good morning. Our first case today is 414-0300, People v. Arnold Munz. And for the appellant, we have Mr. Waller. And for the affilee, we have Mr. Londrigan. Let me proceed, counsel. Good morning. Thank you. May it please the court, counsel. My name is James Waller, and I am the counsel of Mr. Londrigan, and I am here to present Mr. Munz a trial court order sentencing in relation to the case of Mr. Munz. In this case, the trial court sentenced Mr. Arnold Munz, a 57-year-old farmer, to the Department of Corrections on his first felony conviction, without any evidence having been any proper balancing or sentencing factors in the case. It is unjust that the court abuse its discretion by doing any proper balancing or sentencing factors when asking this court to send a judge without balancing. It is our position that the trial court completely abdicated its discretion by failing to address the mandatory factors at all. The statute says that somebody in Mr. Munz's position shall be sentenced to probation unless the Department of Corrections is necessary to protect the public, or a sentence of probation would deprecate the seriousness of the defendant's conduct and would be inconsistent with the acts of justice. Now, no particular aspect of the defendant's behavior was pointed to by the trial court as being so serious as to remove probation as a possibility in this case. The only thing resembling analysis of the statutory factors is that the court made three findings. Well, counsel, we know that the court is not required to go through each factor and say, this is what I find with respect to that factor, correct? That's correct. And don't we have a statement from the court specifically outlining what he did consider? There are statements from the court indicating some of the things that the court considered. We don't believe that there is evidence that the court considered all the factors. And we don't believe that the court is required to give us also the list of every factor. But the court needs to give some evidence that at least looked at and analyzed most of these factors. So if the court is not required to actually outline each factor, how is the court to demonstrate, in your opinion, that it has considered all the factors? The court really should be looking at every piece of the evidence in mitigation and aggravation. At least the evidence presented to it and addressing which factors are addressed or that they may apply to. So the trial courts could have a couple of approaches. They could go through the exhaustive list, and many of them do. The courts could also analyze each piece of mitigation and aggravation and indicate what factors are addressed by those. So we could go in either direction. But we do believe that there is a case on the client that some of the mitigation factors have been addressed. Yes, there are mandatory factors. And so in your opinion, the trial court's statement that it considered the evidence presented at the hearing, the report, the pre-investigation report, that would not be sufficient to demonstrate a consideration of all the appropriate factors? That's my position, yes. A summary statement that it considered those factors is not sufficient for anybody to believe. Counsel, you're specifically arguing to us that the trial court, in its sentence, violated the rule against double enhancements? Yes, we believe so. Okay. You filed a post-trial motion in this case? We filed a motion to reconsider the sentence. Was that specifically raised in the motion? It was. There's no reference to your doing so in your brief? In the brief? Well, I apologize for that. I do specifically, this is from my own memory, but in the motion to reconsider the sentence, we argued that the court, by indicating that, simply, the court indicated you can't just go around shooting guns at people. And giving somebody probation for that would deprecate the seriousness of the offense. I indicated that that's built into the statute. That's why it's a class one in the first place, and probation is eligible. If we say that aggravated discharge of a firearm is per se ineligible for probation, then it becomes effectively a double enhancement. Well, here's the point I want to make, and I want to have you address it specifically. This is an argument that's a term of art. In your brief, you use it correctly. You talk about double enhancement as part of your argument. You specifically mention it. My question is, is that phrase specifically mentioned to the court so as to alert the trial court that you're arguing below, when you argued to it, that this sentence was improper as a double enhancement? I don't recall. It was certainly the intent of my argument. I don't recall using that phrase. Well, the problem is, and there's a statute, and there's Illinois Supreme Court case law, and several decisions from this court recently pointing out that, specifically in the sentencing context, if you didn't explicitly make that argument before the trial court, you forfeited it before this court. That's what I'm trying to get at. Thank you, and I will need to check the transcripts as far as if I used it. Well, I'll ask Mr. Lodrigan about it when he has an opportunity to address this. Go ahead. Thank you. The court made three findings towards the end. The court found, said, I do find that the defendant's conduct has been a serious harm. I do find that a sentence is necessary to deter others from committing the same offense. And I also find that probation would deprecate the seriousness of the offense. I'd like to look at those three things in detail because they were really the only substantive findings that the sentencing court made. The first one was that the defendant threatened serious harm. The court isn't really consistent regarding whether the conduct threatened serious harm. As this court may recall, there were a number of charges that were dismissed relating to aggravated discharge from the firearm towards officers. A lot of the sentencing hearing was spent on whether or not there was a harm threatened towards the officers at that distance, whether the shot hit the country, the piece of paper, etc. The court starts writing off its reasoning before giving the defendant a chance to consider an execution, saying we need to look at some of the red herrings. And the court does indicate that threat to those officers is one of those red herrings. It spends a lot of time talking about how that might be, at least not affect aggravation, but then later on simply says, I do find that there was harm threat because he fired the gun at the people in the vehicle earlier in the day. The court also spent some time talking about, when discussing the threat of harm towards the officers, he says of course the officer couldn't know what was loaded in that weapon, and seems to indicate some kind of subjective nature to that analysis which we don't think was appropriate. Either way, I don't believe it was controlled and the court spent a lot of time on it. The court also found that the sentence is necessary to deter others from committing the same offense. We believe the court simply relied on the fact that there was an aggravated discharge of a firearm, which is a necessary element of the offense, as an aggravating factor, which I believe is per se an enhancement. The court said we can't have people shooting guns at each other. I don't spend a lot of time on that because I don't trust the court. The third finding the court made was that probation would deprecate the seriousness of the offense. This statement by the sentencing judge is a very clear indication of his misunderstanding of the statute. It's the defendant's conduct whose seriousness must be analyzed, not the offense. Even if the seriousness of the offense was supposed to be analyzed, that alone would not be sufficient to overcome the presumption of probation. The statute requires that the trial court must find the sentence of probation would deprecate the seriousness of the defendant's conduct and would be inconsistent with the acts of justice. Again, no conduct is pointed to in the finding. It's just summarily given. I won't waste this court's time by reiterating all the evidence in detail. In defense of the trial court, I think the trial court was aware of the conduct that was committed, right? Yes. It doesn't require a special finding, does it? I believe that what's required is some analysis of how the seriousness of the conduct was deprecated by a sentence to probation. If there's a presumption for it, you have to give reasons for overcoming that presumption. The court says it deprecates the seriousness of the offense, which doesn't make any sense in a statutory language. The majority of the court's reasoning, and the court starts off with the big issue here, is whether there was a medical reason. The court spends time trying to decide which medical opinions to believe, and the court shows the opinion of the state's witness, which did not examine the defendant at all, but simply relied on some documents provided to it by the state. And so you want us, without even having the opportunity to hear from either of those witnesses in person, to step into the trial court's shoes and say, well, you made the wrong decision, trial court? Well, Justice, I'm sorry, the trial court didn't hear from those witnesses either. That's true. But, just to speak directly to your point, I'm not asking this court to substitute its judgment on the balancing, but just to highlight that the trial court spent its time on these issues, which ended up not even being relevant in the maintenance and error of the claim. But your client spent a lot of time saying, you know, this was just not my character, something happened to me, isn't it fair that the trial court would feel somewhat obligated to address that, given your client put so much stake into that? Yes, and I submitted that evidence. I'm not saying the court shouldn't have spent any time on it at all. But if it's going to address that evidence and let it be dispositive, which I believe the court did, the court can simply say, we're going to rely on this doctor who's never treated, never examined the client at all, over the guy that's been treated. Why not? I don't think it's a possible way with the evidence. The court simply chose one that has less foundation in the evidence presented over somebody who's been as I said, intimately involved with the defendant. But there was a significant difference between the experts and their levels of expertise and their prior backgrounds that, wouldn't you say it would be fair that the court, you know, might be leaning toward one and not the other because of that? I don't believe that there was a significant difference in their expertise. The state characterized Dr. Pegg, the farm's doctor, as a sports medicine kind of concussion guy. He's a board certified neurologist. I mean, he's been, and he's been treating this particular patient for six years. And wasn't the state's expert an expert in this very area? Again, this was all stipulated by, there was no board of deer on his positions. We accepted by stipulation that the submission of this report, I did review the CPA, I don't have it in front of me, but yes, I think that he would be admitted as an expert in this area as well. The trial court did give some weight to both the private investigators' report and the ballistics expert. References them in its reasoning, but then summarily comes to the conclusion that serious harm was threatened. And again, all of the private investigators and the ballistics expert all testified again about this threat of harm to the officers in the charge that ended up being dismissed. There was absolutely no abiding evidence in the nature of the defendant's distance to the civilians that were fired at or were hit, which put his biggest sentence on. There was no evidence of the likelihood of hitting them, there was no damage to the vehicle, or pockmarks or anything like that. So all we have is the bare minimum fact that a weapon was discharged towards a vehicle and no abiding conduct on top of that. The court disregarded 12 character reference letters from members of the community discussed by his character, demeanor, propensity to commit further crimes, and it's clear that this statement of non-accusation was given zero weight as the court brought it into its reasoning without waiting for the statement of non-accusation. Counsel, wasn't there a situation where your client at least held a shotgun within inches of one of the victims? Yes. Could the court have been considering that? Yes, I don't recall. I mean, the court may very well have considered anything. I don't recall that the court specifically addressed that. I do know that the state brought it up in their argument. The firearm was brandished in the face of the victims. The victims took off in their vehicle. At some point, the weapon was discharged. I don't know how far away or anything else, but none of that evidence was presented to the court that the court could even rely upon as far as that being particularly aggravating to overcome presumption of probation. The court says as far as special findings go, the court has taken note of those items also. I didn't know what that meant at the time. I don't know what it means today in the context of the transcripts. It's just another example of some of the findings that the court makes. At the motion to reconsider sentencing, Judge Trakoffer said, there's things I want to hear in a good sentencing argument, or excuse me, a good sentencing hearing. I did it, I'm sorry I did it, and here's why it's not going to happen again. As sentencing policies go, I won't say that's unwise, but it's not the law. The law requires you to go through and analyze these factors, not substitute a rubric for whether something is sufficient to be rehabilitated or should go to the Department of Corrections. Any other questions? Thank you, counsel. Good morning, Your Honor. Good morning, counsel. I don't have a great deal to add to what the questions are for the finish. In response to Justice Steinberg's concern, perhaps I should have filed a motion to address the issue in a way that my recollection of it is. Forfeiture. Forfeiture. What? Excuse me. Is that the term actually, I don't know if the term was used or not, but I do recall, I believe the gist of the argument was made. Well, see, it's been a long time since I was a trial judge, but I'm still, trial judges have all my sympathy, and the gist of an argument is not quite the same as hearing the magic words. If I'm a busy trial judge, I maybe on a good day would understand the gist as being, hey, that's a double enhancement argument. But without hearing the magic words, this was double enhancement, Judge, I'm not sure I would recognize it or be prepared to address it. I think my reluctance to make the argument was just, I thought that counsel was getting close. Perhaps I was there. You don't recall now, however, whether those words were specifically used in the hearing? I do not, Judge. I was looking more to see if the argument in its essence was made. I'm not persuaded that it was. Perhaps in there. However, I think there's been an admiss that a trial court is not required to make a laundry list of everything that the court considers in sentencing. The court does note that it has addressed all appropriate statutory factors. It goes through a short laundry list of what it considers. Basically, it's presented with a guy who accepts no responsibility for his actions, comes up with a quite ridiculous argument about some type of seizure disorder, attempting to get out of all responsibility for his actions. And the judge, I think quite appropriately, is not moved by that. I would be much more angry with someone who's trying to falsify the actions in front of me. I think that alone would say a sufficient aggravating factor to call for a sentence beyond what he actually received. I think what was the sentencing range, 40-15, and he only received a five-year sentence, I think he's fortunate to only get five. He's shooting a gun multiple times. Police officers have hit innocent people. He has a beef with the gentleman that he's arguing with and shooting the gun at. Clearly, the whole charade of some kind of seizure disorder is manufactured. It worked once, I suppose, five years ago in getting him out of DUI or whatever he was charged with. Now he feels like he's going to see if he can hit the home run twice. I think the judge was appropriate and, in fact, restrained by not being more angry and having his intelligence insulted and having put up with somebody putting forth this type of offense. Counsel, what's your position on this double enhancement issue? I know you spoke with Justice Steigman about it, but if we are to analyze that, what about the fact that you're opposing counsel saying that the threat of harm is an inherent factor in the offense? Even if it is, Judge, I read Salazar saying that there's still a range of harm that's implicit, even as the Supreme Court said itself, even if it is part of the underlying offense, there's still consideration within there. I mean, this offense is that he shot a gun in the direction of an individual or in the direction of an automobile occupied by individuals. It could be argued, although it doesn't say that serious physical harm is required to be proven, it could be implied that that is a condition or part of the perceived offense by the legislature. However, it's much different when somebody approaches a vehicle, sticks a gun within inches of your face, than when you attempt to get out of the way and fires a couple of times at you. The officer doesn't know what's pointed out by the court. When shots are aimed at him, he doesn't know what the velocity is of the projectile coming out of the weapon. He's not free to assess whether or not he's at a distance that he cannot be harmed at. And he may respond to being fired at in such a way to escalate the situation. So there is potential for serious physical harm. There's a great disregard for the safety of others. This guy locks himself in his house, shooting at officers, ignoring the attempts to get him to come out peacefully, calls his buddy on the phone and says, I think I'm going to need your help to bail myself out, and then lays in bed and falls asleep. Hardly. Not believable. I think the guy's lucky he's got five years. Are there any questions? Thank you. Thank you. Anybody else? Mr. Waller? I apologize. I was taking a moment to review to see if where Devlin Hansen was found, and I'm supposed to review it. I don't see it. What are you referring to? Devlin Hansen, I'm sorry. Well, the record will contain it. It's either there or it isn't. You don't have to supplement anything. We'll look. Regarding, I'm sorry, counsel made several references to Mr. Lentz's behavior after the shooting, and it's been in opposition the entire time. Specifically, the fact you're saying that there were knowledge elements that maybe not have given rise to a defense would be mitigated here. All of the actions that were taken were consistent with Dr. Pegg's diagnosis. Dr. Ergine, the state's witness, points to a couple of factors that sometimes appear in a post-mortem state as not being present. He didn't say, well, it can't be that. Mr. Lentz did demonstrate amnesia. He demonstrated, I mean, there are certainly cognitive problems happening there in the way he's behaving. He goes in and he goes to bed. Officers say, I think he was intoxicated. There's zero evidence of that other than the fact that he was asleep. Officers say, I didn't even really get a good sleep looking at his face. He has a standoff with the police, calls his friends and says, I think something happened. I think I'm going to be in trouble. I've got $1,000. Please do what you can, and then goes in and goes to sleep while he's under siege. It's clear that everything's not firing in his brain, and it's not because of clinical activity. It's because of a serious impairment that's happening there. We don't need to hit every single factor, especially on a brain injury, in order to be diagnosed with that particular condition. Again, even if the double enhancement issue had been broken, I think it's still clear that the trial court did not do a proper balancing of any balancing of the mandatory factors. And even if it's not brought up, I would still argue that the double enhancement is not forfeited when it comes directly from the judge, saying, hey, you can't have people shooting guns, therefore you have to go to prison. You mean you don't have to point out the judge? That's a double enhancement argument? At the point where the judge is giving his sentencing, that's not going to have to be appreciated. Well, you don't have to do it at that point, but how about in the motion to reconsider? Well, again, I believe that some of those contents, and you're right to speak for yourself, and I apologize for my bad memory, a lot of those statements from the judge came in the motion to reconsider. Again, we don't at that point interrupt the judge and say that's a double enhancement. We need to reconsider the reconsideration. So we believe that this would be the first appropriate time to raise these issues. Thank you. Thank you. We'll be in recess until the next case.